FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2007 MAR -8 P 3: 16

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD AND MARION SNYDER | : | Bankruptcy Case No. 99-53312 |
| Appellants | : | |
| | : | |
| v. | : | Civil No. L-06-330 |
| | : | |
| ELLEN COSBY | : | |
| Appellee | : | |

## MEMORANDUM

Richard and Marion Snyder ("the Snyders"), acting pro se, have filed numerous bankruptcy appeals.[1] In this appeal, the Snyders challenge the Bankruptcy Court's Order With Notice Dismissing Chapter 13 Case After Failure to Confirm Plan and Notice that Automatic Stay is Terminated (hereinafter "Dismissal Order"). For the reasons stated below, the Court will, by separate Order, AFFIRM the Bankruptcy Court's Dismissal Order and DIRECT the Clerk to CLOSE the case.

### I.  Background[2]

On March 15, 1999, the Snyders filed a voluntary Chapter 13 Petition in Bankruptcy in the United States Bankruptcy Court for the District of Maryland (Bankruptcy Case No. 99-53312). In an order dated May 20, 2003 ("Denial Order"), Bankruptcy Judge E. Stephen Derby denied confirmation of the Chapter 13 plan that the Snyders had proposed, without leave to

---

[1] Since 2003, the Snyders have filed at least 13 bankruptcy appeals in this Court. (See Civil Nos. L-03-1261, L-03-1539, L-03-1840, L-03-1841, L-03-1868, L-04-1123, L-04-1797, L-04-3132, L-06-330, L-06-331, L-06-1861, L-06-2138, and L-07-255.)

[2] The factual and procedural history of the Snyders' bankruptcy case and various adversary proceedings is complicated. Accordingly, the Court does not discuss it in its entirety. Rather, the background section herein discusses events relevant only to the issues presented in this instant appeal. For more information regarding the Snyders' bankruptcy case and adversary proceedings, please see the Court's Memoranda and Orders in the above-listed bankruptcy appeals.

amend or to file another plan. Judge Derby explained that the Snyders' proposed plan did not fulfill the requirements for confirmation set out in 11 U.S.C. § 1325 and that the Snyders were unable to file a plan susceptible of confirmation. He also stated that "in the event this case is not converted to a case under another chapter within fourteen (14) days from the date of this Order or dismissed voluntarily by the Debtors, then pursuant to 11 U.S.C. § 105(a), this case may be dismissed by the Court on account of Debtors' failure to continue to prosecute the case, without further notice or hearing." (Bankruptcy Case No. 99-53312, Docket No. 123.) The Snyders appealed, and Judge Derby's Denial Order was affirmed by this Court on September 30, 2004,[3] and by the United States Court of Appeals for the Fourth Circuit on March 11, 2005.[4]

On July 15, 2005, Judge Derby dismissed the Snyders' Chapter 13 case, stating:

Debtors have not properly prosecuted this action by electing to convert this Chapter 13 case to a case under another chapter or to dismiss within the time allowed by the [May 20, 2003 Order]. There appears to be no justifiable reason for continuing this Chapter 13 case when Debtors were not able to propose a plan that was adequately funded and when Debtors are barred by the 5 year limit on a plan's term from curing the funding defect even if they were able to do so.

(Bankruptcy Case No. 99-53312, Docket No. 173 (hereinafter "Dismissal Order").) Judge Derby, therefore, ordered that the Snyders' "Chapter 13 case is dismissed subject to Section 109(g) of the Bankruptcy Code which prohibits a new filing for 180 days," and he notified all creditors that the automatic stay imposed by 11 U.S.C. § 362(a) was terminated. (Id.)

The Snyders filed the instant appeal, challenging the Bankruptcy Court's Dismissal Order. For reasons unknown to the Court, the appellee, who is the Chapter 13 Trustee, Ellen

---

[3] See Civil No. L-03-1841.

[4] See In re Snyder, 123 Fed. Appx. 112 (4th Cir. 2005).

2

Cosby, has not filed a brief. The Court, however, has reviewed the Snyders' brief and the record in this case and deems it unnecessary to involve Ms. Cosby at this point. The Snyders' brief and supplemental papers are rambling, disjointed, and, for the most part, rehash the Bankruptcy Court's decision to deny confirmation of their proposed plan without leave to amend, a decision that was already affirmed by this Court and by the Fourth Circuit. It would not assist the Court's analysis of the merits of the appeal to require Ms. Cosby to engage in the painstaking task of sorting through the Snyders' brief and supporting documents and preparing a response.

## II.   Standard of Review

A district court reviews a bankruptcy court's factual findings for clear error, and its conclusions of law under the de novo standard. In re Bogdan, 414 F.3d 507, 510 (4th Cir. 2005), cert. denied, Stewart Title Guar. Co. v. Logan, 126 S. Ct. 1052 (2006).

## III.   Analysis

The Snyders raise several arguments on appeal. The Court will address, and reject, each in turn.

First, the Snyders question the Bankruptcy Court's authority to dismiss their Chapter 13 bankruptcy case sua sponte, without further notice and without affording them a hearing.[5] The Bankruptcy Code specifically allows a bankruptcy judge to, sua sponte, take "any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules,

---

[5] The Snyders also contend that Judge Derby should not have stated in his Dismissal Order that the automatic stay was terminated. The automatic stay imposed by 11 U.S.C. § 362(a) is terminated when a bankruptcy case is dismissed. See Constructivist Found., Inc. v. Bonner, 254 B.R. 863, 865 (D. Md. 2000). Because, as discussed herein, Judge Derby did not err in dismissing the Snyders' bankruptcy case, he likewise did not err in advising creditors that the automatic stay had terminated.

3

or to prevent an abuse of process." 11 U.S.C. § 105(a). Case law recognizes that § 105(a) allows a bankruptcy judge to dismiss a Chapter 13 case <u>sua sponte</u> without further notice.[6] The Snyders have not cited any authority to the contrary, nor have they stated why they believe § 105(a) should not apply to their case.

Moreover, Judge Derby's Dismissal Order was not a surprise to the Snyders. In the May 20, 2003 Denial Order, Judge Derby specifically told the Snyders that he would dismiss their case without further notice and without a hearing if they failed to either convert their case to one under another chapter or voluntarily dismiss the case within fourteen days. (Bankruptcy Case No. 99-53312, Docket No. 123.) The Snyders, therefore, were on notice of what procedural steps were necessary to avoid dismissal. The Snyders, however, failed to take any action, and Judge Derby dismissed the case as stated.

Second, the Snyders contend that dismissal was improper because their case was on appeal when Judge Derby entered the Dismissal Order. It appears that the Snyders are referring to the fact that they had appealed Judge Derby's May 20, 2003 Denial Order. This Court affirmed the Denial Order on September 30, 2004. The Snyders then appealed to the Fourth Circuit, which affirmed on March 11, 2005. The Fourth Circuit issued its mandate on April 27, 2005. On July 15, 2005, the Snyders petitioned the Supreme Court for certiorari.[7] On that same date, Judge Derby entered the Dismissal Order.

When the Fourth Circuit issued its mandate on April 27, 2005, the Bankruptcy Court

---

[6] See <u>In re Tennant</u>, 318 B.R. 860, 869-71 (B.A.P. 9th Cir. 2004) (stating that bankruptcy court can dismiss a case <u>sua sponte</u> under § 105(a) without further notice or a hearing); <u>In re Wheeler</u>, 323 B.R. 758, 761-64 (Bankr. W.D. Wash. 2005) (same).

[7] The Supreme Court denied certiorari on November 7, 2005.

reacquired jurisdiction over the Snyders' case. See United States v. Sears, 411 F.3d 1240, 1241-42 (11th Cir. 2005) (stating that issuance of a mandate gives the lower court jurisdiction over the case again). The Snyders' subsequent filing of a petition for certiorari did not divest the Bankruptcy Court of its jurisdiction. Id. at 1242 ("[T]he mere filing of a petition for certiorari with the Supreme Court neither stops the mandate from issuing nor stops the case from proceeding in the district court."). If the Snyders wanted to stop the proceedings in the Bankruptcy Court while they petitioned the Supreme Court for certiorari, they needed to request the Fourth Circuit to stay the mandate. Id. at 1242; Fed. R. App. P. 41(d)(2). The Snyders never made such a request. Accordingly, when Judge Derby issued the Dismissal Order on July 15, 2005, the mandate was still in effect, and Judge Derby had jurisdiction over the Snyders' case. Dismissal, therefore, was not improper.

Third, the Snyders state that Judge Derby should not have dismissed their case with prejudice, nor should he have stated that dismissal was subject to § 109(g) of the Bankruptcy Code, which prohibits a new filing for 180 days. The Snyders do not explain why their case should not have been dismissed with prejudice. Regarding § 109(g), that section provides that

> no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if . . . the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

11 U.S.C. § 109(g). The Snyders failed to comply with Judge Derby's instruction to convert their case to one under another chapter or to voluntarily dismiss it. Accordingly, Judge Derby dismissed the case, stating that the Snyders "have not properly prosecuted this action." (Bankruptcy No. 99-53312, Docket No. 173.) The Snyders have offered no argument why the

dismissal of their case for failure to prosecute does not trigger the 180-day bar on re-filing.

Fourth, the Snyders contend that Judge Derby could not dismiss their case without giving them an opportunity to file an amended plan. Judge Derby's decision not to grant the Snyders leave to file an amended plan was already affirmed by this Court and by the Fourth Circuit. The Court will not revisit the issue.[8]

Fifth, the Snyders make various challenges to Judge Derby's decision not to confirm their plan. For example, they contend that Judge Derby failed to consider the "disposable income test" and the "good faith" provisions that govern confirmation of a Chapter 13 plan. Judge Derby's order denying confirmation of the Snyders' plan was already affirmed by this Court and by the Fourth Circuit. Accordingly, the Snyders' arguments are not properly before the Court.

Finally, the Snyders make several arguments regarding the Bankruptcy Court's rulings in an adversary case involving the Internal Revenue Service. Those rulings are not at issue in the instant appeal, and the Court will not consider them.

For these reasons, the Court will affirm the Bankruptcy Court's Dismissal Order.

---

[8] In a separate, earlier appeal involving the Snyders' adversary proceeding against the Internal Revenue Service, this Court ruled in September 2005 that the IRS's assessment for the Snyders' 1988 tax was invalid, and the Court remanded the case to the Bankruptcy Court for further proceedings. (See Snyder v. Internal Revenue Service, Civil No. L-03-1539 (Docket Nos. 27, 28).) The Snyders argue that, in light of the invalidation of the assessment, it is possible that they could now propose a plan that the Bankruptcy Court would confirm. For several reasons, the Court rejects the Snyders' argument. First, the Snyders fail to explain how the invalidation of the assessment affects their finances such that they are now able to propose a plan susceptible of confirmation. Second, on remand, the Bankruptcy Court stated that the invalidation of the tax assessment "does not affect the amount of the taxpayers' liability and does not prevent a subsequent procedurally proper assessment." (Adversary No. 99-5583, Docket No. 161, at 4, n.3.) It appears, therefore, that the Snyders are still liable for payment of their 1988 taxes and that the invalidation of the assessment does not improve their chances of proposing a plan susceptible of confirmation.

IV.  **Motion to Stay**

The Snyders have filed a Motion to Stay Pending Appeal, in which they make a vague request that the Court stay "actions involved in [various] orders" that they have appealed to the District Court. (Civil No. L-06-330, Docket No. 6.) The Snyders do not specify which proceedings they wish the Court to stay, nor do they offer any reasons why the Court should stay proceedings in the Bankruptcy Court. Moreover, a party seeking the stay of an order pending appeal "must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970); see also In re Richmond Metal Finishers, Inc., 36 B.R. 270, 271 (Bankr. E.D. Va. 1984) (applying four-part test in determining whether to grant stay pending appeal in bankruptcy case). The Snyders have not addressed this four-part test.

Finally, the Federal Rules of Bankruptcy Procedure specifically provide that "[a] motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." Fed. R. Bankr. P. 8005. Although a stay motion may be presented to a district court, "the motion shall show why the relief . . . was not obtained from the bankruptcy judge." Id. The Snyders do not state that they requested a stay from the Bankruptcy Court, and they have not explained why they bypassed the Bankruptcy Court and requested the District Court to stay the proceedings. Accordingly, the Court will DENY their motion.

7

## V. Conclusion

For the foregoing reasons, the Court will, by separate Order,

(i) AFFIRM the Bankruptcy Court's Dismissal Order,

(ii) DENY the Snyders' Motion to Stay, and

(iii) DIRECT the Clerk to CLOSE the case.

Dated this 8TH day of March, 2007.

Benson Everett Legg
Chief Judge

8